IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

IN RE:

NOVA SECURITY GROUP, INC            CASE NUMBER
                                                                             16-00370

       Debtor.

## THIRD AMENDED
## PLAN OF REORGANIZATION

      NOVA SECURITY GROUP, INC., the above named Debtor, proposes the following Plan of Reorganization with its creditors:

## ARTICLE I
## DEFINITIONS, INTERPRETATION, AND RULES OF CONSTRUCTION

      **A.**      **Definitions.**

      The following terms, when used in this Plan, shall, unless the context otherwise requires, have the following meanings:

      1.01     "Allowed Claim" shall mean a claim:

      (a)     in respect of which a proof of claim has been filed with the Court on or before the applicable Bar Date, as hereinafter defined;

      (b)     which is scheduled in the schedules of assets and liabilities and statement of financial affairs of the Debtor prepared and filed with the Court which is not listed as either disputed, contingent or unliquidated as to amount; and, in either of the foregoing cases;

      (c)     to which no objection to the allowance thereof is interposed; or

      (d)     to which, if objection is interposed, the claim is allowed by an order or judgment which is no longer subject to initiation or continuation of appeal or certiorari proceeding.

      1.02     "Allowed Interest of Equity Security Holder" shall mean an Interest:

(a) in respect of which is scheduled and listed on the List of Equity Security Holder Claims filed in this case, or is held by the Additional Equity Security Holders to whom reference is made in Section 5.1 A of this Plan;

(b) to which no objection to the allowance thereof is interposed; or

(c) to which, if objection to allowance is interposed, the interest of the equity security holder is allowed by an order or judgment which is no longer subject to initiation or continuation of appeal or certiorari proceeding.

1.03 "Allowed Secured Claim" shall mean an Allowed Claim arising on or before the Petition Date that is secured by a valid lien, as hereinafter defined, on property of the Debtor, which lien is not void or voidable under state or federal law, including any provision of the Bankruptcy Code, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan or, in the absence of an agreement, as determined in accordance with Section 506 of the Bankruptcy Code) of the interest of the holder of such Allowed Claim pursuant to this Plan. That portion of such Allowed Claim exceeding the value of the security held therefore shall be a Priority Claim or an Allowed Unsecured Claim, as determined by the Bankruptcy Code without regard to its former secured status.

1.04 "Allowed Unsecured Claims" shall mean all Allowed Claims which are claims other than Priority Claims or Allowed Secured Claims.

1.05 "Bankruptcy Code" shall mean Section 101 et seq. of Title 11 of the United States Code, as amended from time to time.

1.06 "Bar Date" shall mean any particular deadline established by the Court pursuant to Bankruptcy Rule 3003(c)(3) after which (I) any proof of claim filed has no effect on this Plan, and (ii) the holder of such proof of claim has no right to participate with other creditors under the Plan.

1.07 "Claim" shall have the meaning given it in Section 101(4) of the Bankruptcy Code.

1.08 "Class" shall mean any class into which Claims are classified pursuant to Article II hereof.

1.09 "Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the Court.

1.10 "Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan.

1.11 "Consolidated Debtor" shall mean the Debtor who filed this Chapter 11 proceeding, Nova Security Group, Inc. and the assets and liabilities in and the interests of the equity security holders of Nova Electric Immobilization Devices, PLC ("Nova EID, PLC") to the extent such

entity has been substantively consolidated with Debtor by the orders of the United States Bankruptcy Court for the Southern District of Alabama in this case.

1.12    "Court" shall mean the United States Bankruptcy Court for the Southern District of Alabama, Southern Division, presiding over reorganization cases, or if necessary, the United States District Court for said district having original jurisdiction over said reorganization cases.

1.13    "Creditors" shall mean all persons holding claims against the Debtor.

1.14    "Debtor" shall mean Nova Security Group, Inc., the debtor which voluntarily filed this Chapter 11 case.

1.15    "Effective Date" shall mean the first business day on which no stay of the Confirmation Order is and remains in effect that is after thirty (30) calendar days following the Confirmation Date.

1.16    "Interest of Equity Security Holder in Debtor" shall mean the ownership interest lawfully owned by any shareholder as of the Petition Filing Date in Nova Electric Immobilization Devices, PLC ("Nova EID, PLC."), Nova Security Group, Inc. ("the named Debtor or Nova Security Group"), and/or Nova Technologies, USA, Inc. (Nova USA").

1.17    "Lien" shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation including, without limitation, any judicial or equitable lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Bankruptcy Code.

1.18    "Person" includes individual, partnership, and corporations, but does not include governmental unit.

1.19    "Petition Filing Date" means February 8, 2016, the date on which Debtor filed its petition for reorganization under Chapter 11 of the Bankruptcy Code.

1.20    "Plan" shall mean this Amended Plan of Reorganization in its present form or as it may be amended or supplemented from time to time.

1.21    "Priority Claims" shall include all Claims which are entitled to priority pursuant to Section 507 of the Bankruptcy Code.

1.22    "Pro Rata" shall mean with respect to any Allowed Claim in any Class, the proportion that the amount of such Allowed Claim bears to the aggregate amount of all of the Allowed Claims of such Class.

1.23    "Secured Claims" shall mean those claims whose payment is secured by a Lien.

1.24    "Unsecured Creditors" shall mean the holders of Allowed Unsecured Claims.

## B. Interpretation, Rules of Construction, Computation of Time.

1. Any term used in this Plan that is not defined in this Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

2. The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan.

3. Unless specified otherwise in a particular reference, a reference in this Plan to an Article or a Section is a reference to that Article or Section of this Plan.

4. Any reference in this Plan to a document being in a particular form means that the document shall be in substantially such form.

5. Any reference in this Plan to an existing document means such document, as it may have been amended, restated, modified, or supplemented from time to time.

6. Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

7. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

8. All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are filed.
9.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS
## AND STATEMENT OF CLASSES OF CLAIMS NOT IMPAIRED

The following is a designation of the classes of claims and interests under this Plan. Administrative claims and priority tax claims of the kinds specified in Sections 507(a)(1), 507(a)(7), and 507(b) of the Bankruptcy Code, respectively, have not been classified and are excluded from the following classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the

extent that any remainder of the claim or interest qualifies within the description of such different class. A claim or interest is in a particular class only to the extent that the claim or interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date.

2.1 For the purposes of distribution under this Plan, secured claims, and general unsecured claims, and Allowed Interests of Equity Security Holders shall be classified as follows:

        Class 1 -        General Unsecured Claims

        Class 2 -        Holders of Cash Equivalent Equity Security Interests

        Class 3 -        Holders of Gift Equity Security Interests

        Class 4 -        Holders of Property or Services Exchanged For Equity Security Interests

        Class 5 -        Holders of Insider Equity Security Interests

2.2 This Plan contemplates that the claims of all creditors in Class 1 and all Interests of Equity Security Holders in Classes 2, 3, 4, and 5 shall be impaired. There are no unexpired leases. The Executory Contract known as the Exchange Agreement in which the parties include M.A.S, John McDermit family and Ken Brown family is rejected. The ongoing executory contracts with manufacturers and suppliers of Debtor's products are assumed.

## ARTICLE III
## UNCLASSIFIED CLAIMS
## ADMINISTRATIVE AND PRIORITY CLAIMS

3.1 **Treatment of Unclassified Claims.**

A. **General.** Subject to the bar date provisions herein, each holder of an Allowed Claim for administrative costs and expenses of the kind specified in Section 507(a)(1) or Section 507(b) of the Bankruptcy Code shall receive, on account of and in full satisfaction of such Allowed Claim, cash equal to the amount of such Allowed Claim on the Effective Date, unless otherwise provided, and the holder agrees to said less favorable treatment of such claim. Such Allowed Claims for administrative expenses and costs shall be paid by the Reorganized Debtor. Notwithstanding the foregoing, payment on an administrative claim will not be made until such payment would have become due in the ordinary course of the Debtor's business or under the terms of the claim in the absence of this Reorganization Case.

Debtor's postpetition federal tax liability shall be paid no later than the Effective Date of the Plan.

1. If the Debtor fails to make payment of any liability under the Plan to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the debtor or the successor in interest fails to file any required federal tax return by the due date of such return, then the United States may declare that the debtor is in default of the plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or debtor is in default.

2. If the United States declares the debtor or the successors in interest to be in default of the debtor's obligations under the plan, then the entire liability provided for in this Plan, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the debtor or the successor in interest.

3. If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of Title 26 of the United States Code.

B. **Bar Date for Administrative Claims.** All applications for final compensation of professional persons for services rendered and for reimbursement of expenses incurred on or before the Effective Date (including, without limitation, any compensation requested by any professional or any other entity for making a substantial contribution in the Reorganization Case) and all other requests for payment of administrative costs and expenses incurred before the Effective Date under Sections 507(a)(1) or 507(b) of the Bankruptcy Code (except only for claims for postpetition tax liabilities and except for claims for trade debt incurred in the ordinary course of business and claims under 28 U.S.C. § 1930) shall be filed no later than 30 days after the Effective Date, unless such date is extended by the Bankruptcy Court on notice to the Reorganized Debtor and other interested parties. Any such claim that is not filed within this deadline shall be forever barred; and any holders of administrative claims who are required to file a request for payment of such claims and who do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtor, the Reorganized Debtor, or any of its respective property. Any professional fees or reimbursement of expenses incurred subsequent to the Effective Date by the Reorganized Debtor may be paid by such Reorganized Debtor without application to the Bankruptcy Court. Any dispute regarding the payment of such post Effective Date professional fees and expenses which relate to this Reorganization Case or this Plan shall be determined by the Bankruptcy Court.

C. **Payment of Professionals Allowed Administrative Claims.** Debtor proposes to pay the Allowed Administrative Claims of Professionals without interest by allowing the professional to retain any retainer paid to the professional after approval by the Court of said professional's compensation and then paying the Allowed Administrative Claim of the professional by paying $1,500.00 per month to Debtor's lawyer and $1,000.00 per month to Debtor's accountant beginning on the Effective Date of the Plan. Failure by any professional to object to said payment proposal by

the deadline for filing objections to the Plan shall be deemed an agreement to accept said payment proposal in lieu of payment in full on the Confirmation Date.

    3.2    **Priority Claims**

    **A.**    **Priority Tax Claims.**  Except as otherwise provided hereafter in this Section 3.2, each holder of an allowed priority claim for taxes of the kind specified in Bankruptcy Code Section 507(a)(7) shall receive, at Debtor's option, either a cash payment in the amount of such Allowed Claim without interest on the Effective Date or deferred cash payments over a period not exceeding five years from the date the Chapter 11 Petition was filed in this case in an aggregate amount equal to the amount of such Allowed Claim, plus interest from the Confirmation Date on the unpaid portion of such Allowed Claim (without penalty of any kind).

# ARTICLE IV
# UNSECURED CLAIMS

    4.1    **Class 1:  General Unsecured Claims**.  Class 1 consists of general unsecured claims. Debtor shall satisfy the Allowed Claim of each said Class 1 creditor by paying 25% of the Allowed Amount of the claim without interest in full satisfaction of the Class 1 claims.  Payment shall be made by paying a Pro Rata Share of a monthly payment of $1,500.00 beginning on the Effective Date and each month thereafter until 25% of the Allowed Claim of each Class 1 creditor is paid.

# ARTICLE V
# EQUITY SECURITY HOLDER INTEREST CLAIMS
# SUBSTANTIVELY CONSOLIDATED DEBTORS

    5.1    **Classes 2, 3, 4, and 5:  Holder of Equity Security Interests in Nova Security Group, ("Debtor"), and Nova Electric Immobilization Devices, PLC. ("Nova EID, PLC").**

    A.    <u>Identity of Nova Security Group, Inc Equity Security Holders</u>

Classes 2, 3, 4, and 5 consists of all shareholders originally owning shares of stock issued by Nova Electric Immobilization Devices, PLC, a company organized under the laws of Great Britain, ("Nova EID, PLC") who currently own the shares of Nova Security Group, Inc. ("the Debtor" or "Nova Security Group") by virtue of the dissolution of Nova EID, PLC under British Law at the behest of the Crown.  Ownership of the shares of Nova Security Group Inc, a Nevada corporation, is to be "dealt with" by the U.S. State having jurisdiction (presumably the state of incorporation) following the dissolution of Nova EID, PLC.  All shares of stock in Nova Security

Group, Inc. were owned by Nova EID, PLC prior to the Petition Filing Date. Under Nevada law, the state of incorporation, assets of a dissolved corporation are distributed to the shareholders in the event of the dissolution of a corporation with no debts. The current Board of Directors of Nova Security Group believe that because of a series of defective and/or partially completed mergers and stock exchanges, those persons listed on the List of Equity Security Holders filed with the Schedules in this case, constitute all of the Equity Security Holders owning shares of stock issued by Nova EID, PLC as of the Petition Filing Date. Pursuant to BR Rule 3003 (b)(2), the Persons listed as the Equity Security Holders shall be deemed Persons holding Interests as prepetition Equity Security Holders of the Debtor and the number of shares shown by their names on the List of Equity Security Holders shall be considered prima facie evidence of the number of shares of the Debtor's equity securities held by those Persons.

B. <u>Classification of Equity Security Holders</u>

Numerous individuals and entities acquired Interests in Nova EID, PLC, Nova Technologies USA, and Debtor (i) by paying cash or cash equivalents for their shares of stock (hereafter referred to as "Cash Equity Security Holders") (Class 2); (ii) by receipt of a gift of shares from management, from persons then serving on the Board of Directors, or from other insiders (hereafter "Gift Equity Security Holders") (Class 3); (iii) by receipt of shares in exchange for services rendered or transfer of property to one or more of the above named corporations (hereafter "Property or Services Exchanged Equity Security Holders") (Class 4); or (iv) by the creation of the business enterprise now known as Nova Security Group, Inc. (Founder) or receipt of a gift from the Founder (hereafter "Insider Equity Security Holders") (Class 5).

C. <u>Treatment Accorded Each Category of Equity Security Holders</u>.

The Interest of an Equity Security Holder in Debtor is hereby classified as follows and each Equity Security Holder shall receive the number of shares in the Reorganized Debtor set out below:

**Class 2.  Holders of Cash Equivalent Equity Security Interests.**

On the Effective Date of the Plan, each Class 2 Equity Security Holder shall receive the number of equity securities in the Reorganized Debtor equal to the number of Equity Securities owned by the Cash Equivalent Equity Security Holder in the Debtor as of the Petition Filing Date. The names of the Class 2 Equity Security Holders, the number of equity securities held by said Class 2 Equity Security Holder in Nova Security EID, PLC and Debtor as of the Petition Filing Date, and the number shares each said Class 2 Equity Security Holder shall receive in the Reorganized Debtor is set out below:

| | December 8, 2014 | (Original Date) | |
|---|---|---|---|
| | | | Number of Shares |
| | Original Shares | Shareholders | Under the Plan |
| 1 | 350,000 | David Earl Jones | 350,000 |
| 2 | 44,000 | David Earl Jones | 44,000 |
| 3 | 112,784 | James Roger Kroncke | 112,784 |
| 4 | 71,291 | Richard Knight & Maria Manandic Bastin, Jt. | 71,291 |
| 5 | 70,979 | Jarima, Inc., an Alabama Corp. | 70,979 |
| 6 | 41,650 | Eurl Bayne Bridges | 41,650 |
| 7 | 33,655 | Equity Trust Company Custodian FBO Jean Walsh Franz, Sep | 33,655 |
| 8 | 33,302 | James Michael Dyer | 33,302 |
| 9 | 33,125 | Stanley Darrell Lawler | 33,125 |
| 10 | 31,916 | Donald Terrel Stewart | 31,916 |
| 11 | 31,885 | Larry Allen & Mary Margaret Blair, Jt. | 31,885 |
| 12 | 31,191 | UBS Financial Services, Inc., FBO James Virgil West III, IRA | 31,191 |
| 13 | 27,176 | Clair Dean Hansen | 27,176 |
| 14 | 25,715 | William Alexander & Peggie Perkins Prish | 25,715 |
| 15 | 23,399 | Equity Trust Company Custodian FBO Ronald Lee Lowery, IRA | 23,399 |
| 16 | 22,126 | William Daniel Keel | 22,126 |
| 17 | 21,353 | Julius Ellis Below | 21,353 |
| 18 | 21,331 | Equity Trust Company Custodian FBO Scott Jay Smith, SEP | 21,331 |
| 19 | 21,200 | Gordon Gene & Cheri Glee Smith Trust | 21,200 |
| 20 | 21,200 | James Allen Bullock | 21,200 |
| 21 | 21,200 | Jason Edward Havens | 21,200 |
| 22 | 21,200 | Jewel Helen Patterson | 21,200 |
| 23 | 21,200 | Joseph James & Erica Lynn Kroncke, Jt. | 21,200 |
| 24 | 21,200 | Kenneth Edward Guard, Trustee | 21,200 |
| 25 | 21,200 | Leroy Patterson (No Middle) | 21,200 |
| 26 | 21,200 | Marlene Yvonne & Steven Patrick Verwiel, Jt. | 21,200 |
| 27 | 21,200 | Wanda Lou Bullock | 21,200 |
| 28 | 19,080 | Randy Lee & Angie Woldt, Jt. | 19,080 |
| 29 | 18,310 | Edgardo Bosch | 18,310 |
| 30 | 17,983 | Richard Lee & Constance Evelyn Patterson Gilmer, Jt. | 17,983 |
| 31 | 17,312 | Terry Dean Rudberg | 17,312 |
| 32 | 17,236 | Evelyn Willis Plotz | 17,236 |
| 33 | 17,244 | Bridges Consulting, Inc. | 17,244 |
| 34 | 16,872 | Stanley Edgar & Sharron Ellis Adams, Jt. | 16,872 |
| 35 | 16,714 | Terry Stephen Vincent | 16,714 |
| 36 | 16,601 | Stanley Parks & Virginia Shotts Cole | 16,601 |
| 37 | 16,523 | James Michael Tracy | 16,523 |
| 38 | 16,454 | Robert Emmett O'Donnell | 16,454 |
| 39 | 16,398 | Equity Trust Company Custodian FBO Bruce Alan Terry, IRA | 16,398 |
| 40 | 16,033 | Julius Ellis Talton | 16,033 |

Case 16-00370    Doc 397    Filed 03/06/19    Entered 03/06/19 18:24:04    Desc Main
Document    Page 9 of 17

| | | | |
|---|---|---|---|
| 41 | 16,017 | Equity Trust Company Custodian FBO Nancy Marie Green, IRA | 16,017 |
| 42 | 15,964 | Scott Douglas & Carol Denise Mays | 15,964 |
| 43 | 15,905 | Equity Trust Company Custodian FBO Edgardo Bosch, IRA Sep | 15,905 |
| 44 | 15,900 | Robert Laddrick & Beverlyn Powell Griffin | 15,900 |
| 45 | 15,000 | Craig Harold Unger, Unger Security Solutions, LLC | 15,000 |
| 46 | 15,000 | Michael Murphy & Patricia Angelle McMillan, Jt | 15,000 |
| 47 | 15,000 | Steve Allen Antoline, Summit Resources, Inc. | 15,000 |
| 48 | 14,452 | Equity Trust Company Custodian FBO Janice Marlene Cole Mills, IRA Sep | 14,452 |
| 49 | 13,564 | Judith Neurauter Flanigan | 13,564 |
| 50 | 13,250 | Cherilyn Ann Eischen | 13,250 |
| 51 | 13,250 | Paul Robert Kroncke | 13,250 |
| 52 | 12,720 | Bruce Eric Rhoades | 12,720 |
| 53 | 11,660 | Gene Lackey Ballard | 11,660 |
| 54 | 11,348 | Thomas Wendell & Tayna Leigh Boone Holland, Jt. | 11,384 |
| 55 | 10,600 | Brian Adrian Dillard | 10,600 |
| 56 | 10,600 | David Eugene Conradt | 10,600 |
| 57 | 10,600 | Edward Carl & Nancy Jean Zierke, Jt. | 10,600 |
| 58 | 10,600 | Global Consolidated Trading, Inc. | 10,600 |
| 59 | 10,600 | Mark Richard & Rebecca Grace Habeck, Jt. | 10,600 |
| 60 | 10,600 | Todd David Christie | 10,600 |
| 61 | 10,600 | Xiaoqi Wang | 10,600 |
| 62 | 10,000 | Jodi Richfield | 10,000 |
| 63 | 9,956 | Bobby Payne & Mary Kathryn Lepper | 9,956 |
| 64 | 8,483 | Ronald Clifford David | 8,483 |
| 65 | 8,061 | James David Keller | 8,061 |
| 66 | 8,061 | James Davis Keller | 8,061 |
| 67 | 7,969 | Teresa Ann Sisco | 7,969 |
| 68 | 7,959 | James Virgil West IV | 7,959 |
| 69 | 7,950 | William Curtis Gwthney | 7,950 |
| 70 | 7,210 | John Morris & Pamela Dixon, tenants | 7,210 |
| 71 | 6,784 | Patricia Lee Kroncke | 6,784 |
| 72 | 6,784 | Tony Lee Jones | 6,784 |
| 73 | 5,300 | Jennifer Lynn LeBelle | 5,300 |
| 74 | 5,300 | Kathleen T. Dillon | 5,300 |
| 75 | 5,300 | Thomas Patrick Makurat | 5,300 |
| 76 | 4,240 | Greg Matthew & Jennifer Ann Cianciolo, Jt. | 4,240 |
| 77 | 3,360 | Joel Daniel Rudman | 3,360 |
| 78 | 3,336 | John William Savage | 3,336 |
| 79 | 3,325 | Joan Blevins (No Middle) | 3,325 |
| 80 | 3,286 | Roger Harding-Smith | 3,286 |

|    |       |                                       |       |
|----|-------|---------------------------------------|-------|
| 81 | 3,180 | Ky Tracy & Kelly Jean Rasmussen, Jt.  | 3,180 |
| 82 | 3,180 | Robert G. Dumont                      | 3,180 |
| 83 | 2,817 | Arthur Curtis (A.C.) Nunn             | 2,817 |
| 84 | 2,817 | Mary Moore Funk                       | 2,817 |
| 85 | 2,817 | Peggy Taunten Nunn                    | 2,817 |
| 86 | 2,650 | David John & Christine Marie Mack, Jt.| 2,650 |
| 87 | 2,650 | Lara Suzanne & Derek Galen Messer, Jt.| 2,650 |
| 88 | 2,650 | Mary Jane Havens Davis                | 2,650 |
| 89 | 2,120 | Jennifer Tara Garcia Wheat            | 2,120 |
| 90 | 2,120 | Stanley Clayton McDermit              | 2,120 |
| 91 | 2,000 | Julie Anne Smith                      | 2,000 |
| 92 | 2,000 | Micheal William Smith                 | 2,000 |
| 93 | 1,068 | Patricia Jane Brookins                | 1,068 |
| 94 | 1,062 | Roger Martine Orth                    | 1,062 |
| 95 | 1,060 | Greer Edward Fullerton, Jr.           | 1,060 |
| 96 | 1,000 | Byron Craig Townsend                  | 1,000 |
| 97 | 1,000 | Joseph Edward D'Aleo                  | 1,000 |
| 98 | 1,000 | Samuel Charles Vickroy                | 1,000 |
| 99 | 848   | Greer Edward Fullerton, Sr.           | 848   |
|    | **Total 1,874,371** |                         | **Total 1,874,371** |

**Class 3.**      **Holders of Gift Equity Security Interests.**

On the Effective Date of the Plan, each Gift Equity Security Holder shall receive the number of equity securities in the Reorganized Debtor equal to the number of Equity Securities in the Debtor owed by the Category 2 Equity Security Holder on the Petition Date divided by 5. The names of the Class 3 Equity Security Holders, the number of equity securities held by said Class 3 Equity Security Holder in Nova Security EID, PLC and Debtor as of the Petition Filing Date, and the number of shares each said Class 3 Equity Security Holder shall receive in the Reorganized Debtor is set out below:

|   | **December 8, 2014** | **(Original Date)**   |                  |
|---|----------------------|-----------------------|------------------|
|   |                      |                       | **Number of Shares** |
|   | **Original Shares**  | **Shareholders**      | **Under the Plan** |
| 1 | 30,000               | Kimberly Renee Brown  | 6,000            |
| 2 | 21,200               | Daphne Kay Havens     | 4,240            |
| 3 | 18,220               | David Family Trust    | 3,644            |
|   | **Total   69,420**   |                       | **Total   13,884** |

**Class 4.**     **Holders of Property or Services Exchanged For Equity Security Interests.**

On the Effective Date of the Plan, each Property or Service Exchange Equity Security Holder shall receive the number of equity securities in the Reorganized Debtor equal to the number of Equity Securities in the Debtor owed by the Category 3 Equity Security Holder on the Petition Date divided by 3. The names of the Class 4 Equity Security Holders, the number of equity securities held by said Class 4 Equity Security Holder in Nova Security EID, PLC and Debtor as of the Petition Filing Date, and the number of shares each said Class 4 Equity Security Holder shall receive in the Reorganized Debtor is set out below:

|   | December 8, 2014 | (Original Date) |   |   |
|---|---|---|---|---|
|   | Original Shares | Shareholders |   | Number of Shares Under the Plan |
| 1 | 172,294 | David Earl Jones |   | 57,431.30 |
| 2 | 10,000 | Bruce Alan Jacoby |   | 3,333.30 |
|   | Total  182,294 |   | Total | 60,764.60 |

**Class 5.**     **Holders of Insider Equity Security Interests**

On the Effective Date of the Plan, each Insider Equity Security Holder shall receive his/her/its pro rata number of equity securities in the Reorganized Debtor equal to its "Pro Rata Portion" of 12.5% of all shares to be issued in the Reorganized Debtor i.e. 272,202.4 shares to be issued to Class 5 Equity Security Holders in the Reorganized Debtor. The term "Pro Rata Portion" shall mean the proportionate portion of all prepetition Class 5 Insider Equity Security owned by the Insider Equity Security Holder. The names of the Class 5 Equity Security Holders, the number of equity securities held by said Class 5 Equity Security Holder in Nova Security EID, PLC and Debtor as of the Petition Filing Date, and the number of shares each said Class 5 Equity Security Holder shall receive in the Reorganized Debtor is set out below:

|   | December 8, 2014 | (Original Date) |   |   |
|---|---|---|---|---|
|   | Original Shares | Shareholders |   | Number of Shares Under the Plan |
| 1 | 9,000,000 | McDermit Family Trust |   | 272,202.40 |
|   | Total  9,000,000 |   | Total | 272,202.40 |

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.1     **Treatment of Executory Contracts and Unexpired Leases.** Debtor hereby rejects the executory contract referred to as Exchange Agreement with numerous parties including M.A.S,

John McDermit family, and Ken Brown family.  Debtor hereby assumes its executory contracts with its manufacturers and suppliers.

## ARTICLE VII
## REVESTING OF TITLE TO ASSETS AND PURCHASE OF ADDITIONAL ASSETS

7.1     Except as otherwise provided in any provision of this Plan, on the Effective Date all property of the Estate shall revest in the Reorganized Debtor, all free and clear of all claims, liens, encumbrances, and other interests of Creditors and Equity Security Holders.  From and after the Effective Date, the Reorganized Debtor may use, acquire, and dispose of property without supervision of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, other than those restrictions presently imposed by this Plan and the Confirmation Order. The Reorganized Debtor may change the name of the corporation after confirmation.  The Reorganized Debtor shall be authorized to merge and combine its assets, liabilities, and equity securities with any other valid legal entity.

## ARTICLE VIII
## RETENTION OF CLAIMS AND CAUSES OF ACTION

8.1     Nova Security Group, as Reorganized Debtor, in behalf of Nova EID, PLC, Nova USA, and Debtor hereby retains all claims and causes of action which each entity and the combination of said entities may have against any and all persons, companies and other entities and nothing contained herein shall be deemed a release by Debtor, Nova EID, PLC or Nova USA of any cause of action, judgment, or claim it may now have or may hereafter acquire against the person, corporation or entity.  Reorganized Debtor itself and each above entity, specifically retains all claims and causes of action against one or more of the current and/or former directors, officers, organizers, attorneys, accountants, or other persons providing advice to and acting on behalf of Nova Security Group, Nova USA, Nova EID, PLC and/or any of their predecessors for their wrongful conduct or breach of fiduciary duty owed to any one or more of said entities or to the shareholders of the same for fraud or conspiracy to defraud in connection with the formation, management of, or sale of securities of the above entities and/or in connection with the disposition or loss of the assets of the above, for violation of any applicable securities laws and/or the conversion of any of the assets, including intellectual property and patents, belonging to one or more of the above named entities.  Nova Security Group, as Reorganized Debtor in behalf of the above entities, retains all claims and causes of action to recover from any party any and all properties and assets of any one or more of the above entities, including, but not limited to, intellectual property or any rights thereafter.  All said causes of action shall become the property of the Reorganized Debtor upon confirmation of this Plan.

## ARTICLE IX
## MEANS FOR EXECUTION AND IMPLEMENTATION OF PLAN

9.1     **Funding of Plan.**  Funds required to make the payments required by this Plan, shall be provided from the funds of Debtor's Estate, from funds generated by the operation of the business, from any funds borrowed post-petition or post-confirmation, from the proceeds of the sale of any of

13

Case 16-00370    Doc 397    Filed 03/06/19    Entered 03/06/19 18:24:04    Desc Main
                    Document      Page 13 of 17

the assets of the estate, from the operations of Reorganized Debtor, and from the sale of equity securities issued by Debtor.

9.2 **Discharge of Debtor and Injunction.** The rights afforded in this Plan and the treatment of all claims and equity interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all claims and equity interests of any nature whatsoever, incurred through the Confirmation Date, including any interest accrued on such claims from and after the Petition Date, against the Debtor, or any of its assets or properties. Except as otherwise provided in this Plan or the Confirmation Order (I) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all claims and interests, including, but not limited to, demands, liabilities, claims and interests that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h), or 502(I) of the Bankruptcy Code, whether or not: (a) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest has accepted the Plan; and (ii) all Persons shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets or properties any other or further claims or equity interests based upon any action or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise provided in this Plan, the Confirmation Order shall act as a discharge of any and all claims against and all debts and liabilities of the Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a claim discharged.

Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, claim or interest discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor, its successors or its property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, its successors or its property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, its successors or its property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor, its successors or its property; (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Any Person injured by any violation of such injunction shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstance, may recover punitive damages, from the willful violator.

9.5 **Preservation of Rights of Action.** Any of Debtor's rights or causes of action against any party including, but not limited to rights or causes of action preserved in Section 8.1 of this Plan and rights of causes of action under Sections 544 through 550, inclusive, of the Bankruptcy Code or under any other statute or based on any legal theory shall remain assets of, and vest in, the Reorganized Debtor. Specifically included in said assets shall be the rights to pursue causes of action for preferences and fraudulent transfers. The Reorganized Debtor may pursue those rights of action,

as appropriate, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtor.

9.6     **Limitation of Liability.**  Neither the Debtor, nor its respective officers, directors, employees, members or agents, nor any professional Persons employed by any of them shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming or consummating this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

9.7     **Other Documents and Actions.**  The Debtor and the Reorganized Debtor may execute such documents and take such other action as is necessary to effectuate the transactions provided for in this Plan.

9.8     **Unclaimed Property.**  Any property to be distributed on account of a claim against or interest in the Debtor shall be distributed by mail to the latest mailing address Filed of record for the party entitled thereto, or if no such mailing address has been so Filed, the mailing address reflected in the Schedules of Assets and Liabilities Filed by the Debtor.  Any property so distributed that is unclaimed for five years after the distribution thereof by mail shall be come property of the Reorganized Debtor free and clear of any restrictions thereon.

9.9     **Setoffs.**  The Reorganized Debtor may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such claim, claims of any nature that the Debtor or Reorganized Debtor may have against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim against the Debtor or Reorganized Debtor shall constitute a waiver or release by the Debtor or Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may possess against such holder.

9.10     **Management of Reorganized Debtor.**  The current Board of Directors, Rick Bastin, Janice Mills, Bayne Bridges, Jim Kroncke, George Williams and John McDermit shall continue to serve as members of the Board of Directors of the Reorganized Debtor until such time as new directors are elected.

9.11     **Corporate Governance Documents.**  The Board of Directors of the Reorganized Debtor shall take such action as it deems appropriate to bring its Articles of Incorporation in the State of Nevada into compliance with the term of this Plan including amending the same to increase the number of authorized shares of stock and amending the By-laws of said Corporation and the Board of Directors shall have authority to qualify the Reorganized Debtor to do business in any state of its choosing.

## ARTICLE X
## RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case:

15

10.1 To determine the allowance or disallowance of and the amount, priority, validity and dischargeability of claims and interests.

10.2 To interpret the Plan and hear all disputes arising in connection with execution of this Plan.

10.3 To fix and approve allowances of compensation and other administrative expenses, including, if appropriate, payments to be made in connection with this Plan.

10.4 To decide controversies and disputes arising under or in connection with the Plan, the distribution of equity securities of the Reorganized Debtor, and the merger of the Reorganized Debtor.

10.5 To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, and to modify or amend the Plan.

10.6 To enforce all causes of action which may exist in behalf of the Debtor.

10.7 To issue any order, process or judgment necessary or appropriate to carry out the provisions of the Plan.

## ARTICLE XI
## OBJECTIONS TO CLAIMS

11.1 Notwithstanding any provision of the Plan specifying a date or time for payment of distribution of consideration hereunder, payments and distributions in respect of any claim that at such date or time is subject to an objection, motion for estimation, or scheduled as disputed, unliquidated, or contingent, or the collateral securing said claim is subject to a pending valuation request, shall not be made until an order with respect to such objection, estimation, or valuation becomes final, whereupon such payments and distributions shall be made promptly in accordance with the Plan.

DATED this the 6th day of March, 2019.

                                            DEBTOR
                                            NOVA SECURITY GROUP, INC.

                                            BY: /s/ Richard K. Bastin
                                                  RICHARD K. BASTIN
                                                  As: Its President

Irvin Grodsky
Irvin Grodsky, PC
Attorney for Debtor

Post Office Box 3123
Mobile, Alabama 36652
(251) 433-3657